1
2
3

HERBERT MILLER
11155 SHADOW COURT
AUBURN, CA., 95602
916-849-1636/916-798-0857

**FILED**

JAN 2 0 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

4
5

HERBERT MILLER
PLAINTIFF IN PRO PER

6

7

8

## UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

10

11
12
13
14
15
16
17
18
19
20

| | |
|---|---|
| HERBERT MILLER, an Individual;<br><br>                    Plaintiff,<br><br>vs.<br><br>BAYVIEW LOAN SERVICING, LLC.,<br><br>PLACER TITLE COMPANY and DOES 1-6<br><br>inclusive,<br><br>                    Defendant | Case No.:<br><br>**2:17 - CV - 0 1 3 6 JAM KJN PS**<br><br>COMPLAINT |

21

22        HERBERT MILLER, (hereafter "Plaintiff") alleges as follows:

23                        ## JURISDICTION

24   **Federal Question Jurisdiction**

25

26        1.    PLAINTIFF asserts this Court's federal question jurisdiction, codified

27   in 28 U.S.C. § 1331, on the basis that there are several questions arising under

28

federal laws, including without limitation violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq); Truth In Lending Act (15 U.S.C. §§ 1640-1641); Fair Credit Reporting Act (15 U.S.C. § 1681s-2), and the Internal Revenue Code regulating Real Estate Mortgage Investment Conduit (REMIC) Trust (26 U.S.C. §§ 860D, 860F, and 860G, as well as their corresponding Treasury Regulations).

**Diversity Jurisdiction**

2.     As a separate claim to, PLAINTIFF's assertion of federal question jurisdiction, PLAINTIFF asserts federal diversity jurisdiction on the basis that at each Defendant is jurisdictionally diverse from PLAINTIFF's California domicile, and the amount in controversy exceeds $75,000.00.

**Supplemental Jurisdiction**

3.     Additionally, PLAINTIFF also asserts this Court's supplemental jurisdiction over all issues of state law mentioned herein on the basis that those state issues arise from the same facts and circumstances as the acts alleged herein warranting federal jurisdiction over this Complaint.

**VENUE**

4.     The United States District Court for the Eastern District of California, Sacramento Division, is the appropriate and proper venue for this action, on the

basis that all contracts signed by PLAINTIFF and acts giving rise to a cause of action described herein were completed and committed in Sacramento, California.

## PARTIES

5.    PLAINTIFF HERBERT MILLER was at all times mentioned herein, an individual resident of Placer County, California.

6.    Defendant BAYVIEW LOAN SERVICING, LLC. ("BLS"), was at all times mentioned herein, a Limited Liability Company located at: 4425 PONCE DE LEON DR., CORAL GABLES, FL., 33146. (800) 457-5105.

7.    Defendant PLACER TITLE COMPANY ("PTC") was at all times mentioned herein, a subsidiary of MOTHER LODE HOLDING COMPANY and conducted business in Sacramento County, California.

8.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each Defendant designated herein is or was the agent, partner, employee, co-developer, joint-venturer, subcontractor, consultant, and/or supplier of each of the remaining Defendants, and was at all times herein mentioned, acting within the course and scope of said agency and employment.

9.    Plaintiff is informed and believes and thereon alleges that the Defendants and each of them, and DOES 1 through 10, inclusive, were in some manner negligently or otherwise tortuously responsible for the events and

happenings hereinafter alleged, and that each are vicariously liable for the acts of each other.

10.    The true names and capacities of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said unknown Defendants, and each of them, by such fictitious names.  Plaintiff will seek leave of court to amend this Complaint to insert the true names and capacities of fictitiously named Defendants when same has been ascertained.  Plaintiff is informed and believes and, based upon such information and belief alleges, that each Defendant herein designated as a "DOE" herein is legally responsible in some manner for the acts, occurrences, damages and liabilities hereinafter alleged, and actively and passively caused and contributed to the various injuries and damages referred to herein.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

**The Loan Origination**

11.    On April 30th, 2007, in Sacramento, California, PLAINTIFF MILLER executed a secured promissory note ("Note"), and a deed of trust ("DoT"), which secured the Note with the real property located at 11356 Alta Mesa East Rd., Wilton, CA., 95693 in the city of Wilton, California (the "Property").  At all relevant times, PLAINTIFF MILLER has been the fee simple owner of the Property.

1.    The legal description for the Property is:

PARCEL "A" AS SHOWN ON THAT CERTAIN PARCEL MAP ENTITLED "A PORTION OF LOT 7 IN DON RAY COLONY NO. 1, FILED IN BOOK 12 OF MAPS, MAP NO. 46, IN SECTION 28, T. 6N., R7E, M.D.M." RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF SACRAMENTO ON JUNE 26, 1980, IN BOOK 58 OF PARCEL MAPS, AT PAGE 33..

2.      At all relevant times, PLAINTIFF MILLER has occupied the Property as his home and primary residence, and the Property consists of only one dwelling unit.

3.      The DoT was recorded in the Sacramento County Recorder's Office as document number 20070430 on April 30, 2007.  The DoT and the Note are hereafter jointly referred to as the "Mortgage."   PLAINTIFF alleges that this recording was done by REWARD MORTGAGE. without reasonable grounds to believe in the validity of the DoT because it was the product of an illegal table-funded loan originated and perpetrated by REWARD MORTGAGE against PLAINTIFF with reckless disregard for PLAINTIFF's rights or for the economic damage that the DoT would cause to PLAINTIFF's Property.   PLAINTIFF therefore alleges that the recording of the DoT does not qualify as privileged publications under California Civil Code section 47.

4.      REWARD MORTGAGE was never licensed in California by the California Bureau of Real Estate to offer consumer financial loans at all times relevant herein.

5.     REWARD MORTGAGE was never exempt from licensure under 10 CCR § 1422 et. seq.

6.     REWARD MORTGAGE was never exempt from licensure under California Financial Code §§ 22100-22112.

7.     The California Department of Business Oversight has certified in writing to PLAINTIFFS that REWARD MORTAGE was never licensed to conduct business in California, ever.

8.     PLAINTIFF is informed and believes that, at all relevant times, BLS has acted as the mortgage loan servicer of the Mortgage, a first-lien mortgage on the Property.

9.     The Mortgage was made only for personal, family, or household purposes.

**The Deed of Trust**

12.     PLAINTIFF MILLER was described as the "Borrower" in the Note, and the "Trustor" in the DoT.

13.     At that time "Placer Title" was described as the "Trustee" in the DoT, and was not mentioned at all in the Note.

14.     MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. ("MERS") was described in the DoT as the "Beneficiary," however, the DoT limited MERS's authority solely as "Nominee" for the Lender.

15.   Section 22 of the DoT states in pertinent part:

"Acceleration; Remedies.   Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument …. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) the failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.   The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.   If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.   Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence."

**Pass-Through Securitization**

16.   From 2000 to 2007, lenders across the nation, including REWARD MORTGAGE, originated trillions in mortgage loans.   The ballistic ascent of the lending industry's ability to originate so many mortgages was primarily due to the ability to "securitize" the mortgages into privately held investment conduits that allowed them to draft their own underwriting guidelines.   No longer hindered by

the rigors of federal agency underwriting guidelines, the lending industry could literally underwrite any type of loan they wanted, and they did.

17.   "Securitization" is the process of pooling mortgages to be sold, or to pre-fund escrows, in bulk to special purpose entities ("SPE"), usually REMIC Trusts, that supported the issuance of securities to the security markets for sale to the general public.   Once the mortgages were securitized, or pre-funded, the mortgages were no longer, or never, owned by the lender, instead being owned by the SPE, and were taken off, or never registered under, the lender's balance sheet as sold.

18.   Although securitization was originally created as a post-origination transaction where bundles of mortgages were pooled together and sold off in bulk to SPEs, as demand grew for mortgage-back securities in the market place, lenders started creating SPE's prior to any loan being originated with the agreement that any loan being funded by those pre-origination funds would be automatically transferred through the originating lender to the SPE from which the loan was funded from.   In these "pre-securitization" transactions, the lender acted as a conduit, in effect a broker, maintaining only a profit yield spread premium and the servicing rights to the mortgage as it passed through the "named" surrogate lender to the SPE.

**Table Funding**

19.   The process of posing as the surrogate funding lender, while actually acting as a broker and importing the funding to close a lending transaction is known as "table funding."   Although table-funding is legal for all commercial transactions in California, the Legislature specifically made residential table-funding illegal with the passage of AB 1203 in 1998, which became California Business and Professions Code section 10234.

20.   The process of pre-securitizing residential loan funding and passing that funding through a third party, who is falsely holding itself out to be the lender, and is instead importing the money to fund the loan, is illegal table funding in contravention of California Business and Professions Code § 10234.

21.   PLAINTIFF is informed and believes, and thereupon alleges, that the funding for the Note was from a pre-securitized entity unknown to PLAINTIFF, and the Mortgage was a table-funded loan on a residential property.

22.   PLAINTIFF is informed and believes, and thereupon alleges, that REWARD MORTGAGE, while never registered with the then California Department of Real Estate as a loan broker, but nevertheless acting in that capacity, listed itself as "Lender" in the DoT, but the funds for the loan actually originated in a pre-securitized SPE as part of a table-funded transaction. REWARD MORTGAGE was described as the "Lender" in the Note and DoT.

23.    PLAINTIFF alleges that the table funding of residential home loans in this manner by REWARD MORTGAGE violated California Business and Professions Code section 10234.

### The Deed of Trust is Void as an Illegal Contract

24.    The recording of a deed of trust on a residential property in California is illegal when the party listed as the "lender" in the deed of trust is not the funding party of the mortgage.

25.    At the time of the Mortgage's origination, REWARD MORTGAGE was *not* registered with the then California Department of Real Estate as a loan broker, however, their presence on the deed of trust indicated that they were in the business, amongst other things, of brokering loans in California.   REWARD MORTGAGE, in its capacity as an un-registered loan broker in California, subjected itself to the restrictions of California Business and Professions Code § 10234, which banned table funding loans by registered, or un-registered, loan brokers on residential property in California.

26.    However, REWARD MORTGAGE listed itself as "Lender" in the DoT, even though it was acting as a broker to table fund the Mortgage from a pre-securitized SPE or other source independent of REWARD MORTGAGE, thereby violating California Business and Professions Code section 10234.

27.    A deed of trust, including the DoT herein, which violates Business and Professions Code section 10234 is an illegal contract under California Civil Code §§ 1592 and 1608, because it is the object and consideration to an illegal transaction, i.e. the illegal table-funded mortgage on a residential property by a registered loan broker.  The DoT herein therefore became void on its recording date in 2007.

28.    Therefore, the Mortgage has been unsecured since 2007, and without a valid DoT on title, neither of the Defendants herein have any authority to foreclose on the Property.

**Undisclosed Assignment of the Deed of Trust**

29.    Subsequent to the execution and recording of the DoT, MERS assigned the Mortgage to one (1) of other entity[ies], culminating with BLS claiming equitable ownership of the loan proceeds at the time this complaint was filed.

30.    Although the Note and Deed of Trust both state that the Mortgage can be transferred numerous times without notice, the California Statute of Frauds (codified in California Civil Code § 1624) requires that an assignment of an interest in real property (which includes the encumbrance contained within the DoT) must be made in writing and recorded in the recorder' office of the county in which the real property is located.

31.   Further, the federal Truth In Lending Act requires that when a mortgage is assigned, the assignee is required to notify the borrower within thirty (30) days.

32.   According to public records of Sacramento, the DoT was purportedly assigned to BLS on December 15th, 2009, however, BLS never provided PLAINTIFF any written notice whatsoever of the assignment leaving PLAINTIFF in the dark as to the identity of the Mortgage's holder.  REWARD MORTGAGE was also closed by operation of law back in 2009, prior to the execution of the assignment of deed instrument. The assignment that was executed in 2009, however, was executed by MERS as a nominee for REWARD MORTGAGE, who was permanently incapacitated at the time of the execution of the assignment instrument, rendering MERS an incapacitated agent/nominee for REWARD MORTGAGE.

33.   In spite of the fact that the DoT was voided by its recording previously, and with full knowledge of the table-funded pre-securitized character of the Mortgage, BLS instructed an agent to cause to be executed and recorded a Notice of Default and Election to Sell Under Deed of Trust (the "NoD") against the Property in Sacramento County Recorder's Office.

34.   The NoD was executed at the direction of BLS.  PLAINTIFF alleges that this recording was done by BLS without reasonable grounds to believe that

BLS, or its predecessor-in-interest, had the authority to file the NoD, and therefore executed and recorded the NoD with reckless disregard for PLAINTIFF's rights or for the economic damage that the NoD would cause to PLAINTIFF's Property. PLAINTIFF therefore alleges that the execution and recording of the NoD do not qualify as privileged publications under California Civil Code §§ 47 and 2924.

35.     At the time of the execution and recording of the NoD, the DoT had been void for six (6) of years.   Additionally, since California Business and Professions Code section 10234 became effective in 1998 (more than seven (7) years prior), each and every Defendant herein was aware of the law and the facts that rendered the DoT void and unenforceable.

36.     Yet, with that knowledge and notice, the NoD was executed and recorded without any authority to do so under the void DoT.   Therefore, any presumption granted by law by the filing of a NoD under Civil Code section 2924 et. seq. is negated by this critically defective NoD.   Further, PLAINTIFF affirmatively refutes the raising of the California Civil Code § 2924 presumption, and objects to the NoD being utilized as evidence of such presumption.

37.     The NoD is also critically deficient substantively because of the following nonexclusive list of major defects:

a. The DoT was rendered void by its recording and therefore BLS was not authorized to file, or rely upon, a NoD because the loan was rendered unsecured;

b. The NoD states that MERS, as nominee for REWARD MORTGAGE, is the beneficiary of the DoT, but does not list BLS as the successor in interest to the DoT or the Note;

c. The NoD, by its own terms, accelerates the Mortgage under paragraph 22 of the DoT, however, BLS failed to give the required 30-day notice under that provision of the DoT;

d. The NoD's supporting declaration is void under California Civil Code section 2923.17;

e. The NoD contains a false statement and/or a legal presumption that the trustee received a written declaration of default and demand for sale, when in fact the trustee never received such declaration and demand as required by California foreclosure laws;

f. REWARD MORTGAGE had already sold off the Note, or pre-funded, the DoT through the securitization process by that time. MERS's authority to act on behalf of REWARD MORTGAGE

ended when the Mortgage was sold off, or pre-funded, into securitization; and

    g.  BLS is not purporting be working for MERS, who was listed as the beneficiary in the DoT, but BLS has never had any right to collect on the Mortgage.

38.    Since BLS, and/or its predecessor-in-interest, did not have any right to the Mortgage, BLS's agent did not have authority to execute and record the NoD.

**Tender**

39.    Within the entirety of this complaint, and as to all causes of action and factual allegations therein, PLAINTIFF is alleging that the Defendants herein, and each of them, never had any actual authority or right to execute or record the Assignments or NoD against the Property, nor to negotiate the Mortgage under color of foreclosure mitigation, due to a void DoT.  As such, where PLAINTIFF is challenging the authority to foreclose based off of allegedly void documents, PLAINTIFF is not required to tender.

### Violation of the Fair Debt Collection Practices Act
### (15 U.S.C. 1692 et. seq.)
### Against BLS

40.    PLAINTIFF incorporates herein by this reference all prior allegations made herein above.

41.     Congress passed the Fair Debt Collection Practices Act ("FDCPA") in 1977 wherein 15 U.S.C. § 1692e stated purpose of eliminating "abusive debt collection practices," ensuring "that those debt collectors who refrain from using abuse debt collection practices are not competitively disadvantaged," and promoting "consistent State action to protect consumers against debt collection abuses."   In furtherance of these purposes, the FDCPA bans a variety of debt collection practices and allows individuals to sue offending debt collectors.

42.     The Note, which is included in the Mortgage, is a debt under the Fair Debt Collections Practices Act.

43.     BLS is a debt collector under 15 U.S.C. § 1693a as BLS uses instrumentalities of interstate commerce or mails in any business the principle purpose of which is the collection of a debt and regularly collects or attempts to collect, directly or indirectly, debts owned or due or asserted to be owed or due to others, including BLS.

44.     BLS is vicariously liable for the acts of its agent, the person who executed the NoD, for the acts that the agent took on BLS" behalf, while acting in the scope of that agency, which was the collection of the debt described in the Note.

45.     BLS is not the owner or creditor of the Note, nor does BLS have any ownership interest in the Property.

46.    BLS did violate two provisions of the FDCPA, specifically 15 U.S.C. §§ 1692e and 1692f, in that (1) they used false, deceptive, or misleading representations or means in connection with the collection of the Note; and (2) they used unfair or unconscionable means to collect or attempt to collect a debt by (i) claiming that the mortgage is secured when it is not, (ii) claiming that the Property is subject to foreclosure when it is not, (iii) threatening to foreclose against the Property if payment is not made when they do not have a valid security interest in the Property to execute, (iv) filing of the NoD against the title of the Property when they had no authority to do so.

47.    PLAINTIFF has repeatedly disputed BLS' claims that the Property is secured, yet the agent, at the direction of and on behalf of BLS, continued their unauthorized, unfair, and unconscionable conduct against PLAINTIFF.

48.    BLS, unlawfully, unfairly, and unconscionably put the screws to PLAINTIFF, and as a direct and proximate result of BLs' conduct, PLAINTIFF has sustained economic damage, including without limitation, the devaluation of the Property due to the filing of the NoD, in an amount to be proven at trial.

**CAUSE OF ACTION TWO**
**Violation of the Truth In Lending Act**
**(15 U.S.C. § 1641)**
**Against BLS**

49.     PLAINTIFF incorporates herein by this reference all prior allegations made herein above.

50.     15 U.S.C. § 1641, subd. (g) requires the recipient of a residential mortgage by assignment to notify the borrower in writing within thirty (30) days of when the loan was transferred.

51.     BLS has asserted to PLAINTIFF, through U.S. Mail, that it was the recipient of the Mortgage by assignment from MERS.

52.     PLAINTIFF has never received any written notification from BLS that the Mortgage was transferred to BLS as required under 15 U.S.C. § 1641(g), and therefore PLAINTIFF is informed and believes and thereupon alleges that BLS failed to notify PLAINTIFF that the Mortgage was transferred to BLS by assignment within thirty days of that transfer.

53.     During all times mentioned within this cause of action, PLAINTIFF has maintained the Property address as PLAINTIFF's mailing address, and has kept the Property as PLAINTIFF's primary residence.  There has not been any time during the times mentioned within this cause of action, where PLAINTIFF maintained any other mailing address for purposes of notice regarding the Mortgage.

54.     The Mortgage is a mortgage on a residential property within the scope of the Truth In Lending Act.

55.     As a direct and proximate result of BLS' failure to notify PLAINTIFF of the assignment, PLAINTIFF has suffered actual damages, including without limitation, the cost to hire of an attorney to find out the ownership status of the Mortgage, delinquency, and negative credit reporting in an amount to be proven at trial.

56.     Additionally, and as a separate measure of damages, BLS is liable for statutory damages equal to no less than $400.00 and not greater than $4,000.00 per violation.

57.     PLAINTIFF has incurred reasonable attorney's fees and costs in prosecuting this claim, and is entitled to an award of attorney's fees and cost therefrom.

**CAUSE OF ACTION THREE**
**Violation of the California Rosenthal Act**
**(Cal. Civ. Code § 1788.1)**
**Against BLS**

58.     PLAINTIFF incorporates herein by this reference all prior allegations made herein above.

59.     The California Rosenthal Act was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts.

Section 1788.17 of the Rosenthal Act also includes violations of the FDCPA in a separate violation of state law.

60.    BLS is a "debt collector" as defined by the Rosenthal Act because they regularly, in the ordinary course of its business, on behalf of themselves or others, including each other, engages in debt collection.

61.    The Note herein is a debt as defined by the Rosenthal Act because the Note is money, property or their equivalent which is due and owing or alleged to be due or owing from BLS.

62.    Additionally, and as a separate allegation of culpability, BLS is vicariously liable for the acts of its agent for the acts that the agent took on BLS' behalf, while acting in the scope of that agency, which was the collection of the debt described in the Note.

63.    BLS did violate Rosenthal Act, in that (1) they used false, deceptive, or misleading representations or means in connection with the collection of the Note; and (2) they used unfair or unconscionable means to collect or attempt to collect a debt by (i) claiming that the mortgage is secured when it is not, (ii) claiming that the Property is subject to foreclosure when it is not, (iii) threatening to foreclose against the Property if payment is not made when they do not have a valid security interest in the Property to execute, (iv) filing of the NoD against the title of the Property when they had no authority to do so, (v) violating the

California Homeowner Bill of Rights, by failing to put a single point of contact that was authorized to grant PLAINTIFF an extension of time to get legal counsel.

64.   PLAINTIFF has repeatedly disputed BLS' claims that the Property is secured, yet BLS continued their unauthorized, unfair, and unconscionable conduct against PLAINTIFF.

65.   BLS unlawfully, unfairly, and unconscionably put the screws to PLAINTIFF, and as a direct and proximate result of BLS' conduct, PLAINTIFF has sustained economic damage, including without limitation, the devaluation of the Property due to the filing of the NoD, in an amount to be proven at trial.

### CAUSE OF ACTION FOUR
### Violation of the California Unfair Competition Law
### (Cal. Bus. & Prof. Code § 17200 et. seq.)
### Against All Defendants

66.   PLAINTIFF incorporates herein by this reference all prior allegations made herein above.

67.   California's Unfair Competition Law ("UCL") may be brought by a person who has suffered injury in fact and has lost money or property as a result of unfair competition, which is defined as any "unlawful, unfair or fraudulent business act or practice" by California Business and Professions Code 17200.

### Unlawful Acts by AMERICA'S WHOLESALE LENDER

68.   REWARD   MORTGAGE   violated   California   Business   and Professions Code section 10234 by table funding a residential mortgage after January 1, 1998, in that REWARD MORTGAGE, while not registered as a California licensed mortgage broker, but acting in that capacity, did originate a residential mortgage, to wit the Mortgage herein, and funded the Mortgage with moneys that were not REWARD MORTGAGE'S assets, but the assets of a pre-securitized SPE, and did thereafter record the DoT listing REWARD MORTGAGE as the "Lender" in direct contravention of section 10234.

69.   REWARD MORTGAGE caused a void instrument, the DoT herein, with full knowledge of its illegal character, to be recorded in the County Recorder's Office for Sacramento County in violation of California Penal Code sections 115.5 and 532 *et. seq.*

70.   By recording the illegal and void DoT, REWARD MORTGAGE also slandered the title to PLAINTIFF's Property.

71.   PLAINTIFF alleges that by engaging in the above described acts and/or practices as alleged herein, REWARD MORTGAGE has violated the above described California laws and those violations are therefore per se violations of the UCL.

72.   PLAINTIFF alleges the REWARD MORTGAGE'S misconduct, as alleged herein, gave, and have given, BLS, it's assignee, an unfair competitive

advantage over their competitors, and the scheme implemented by REWARD MORTGAGE as described herein is and was the result of unfair business practices designed to enrich BLS to the illegal detriment of PLAINTIFF.

73.    As a direct and proximate cause of REWARD MORTGAGE'S illegal table funding and recording of the void DoT, PLAINTIFF has been economically damages including without limitation the devaluation of PLAINTIFF's Property by the void and illegal encumbrance the DoT creates on the title to the Property, the inhibition the encumbrance has caused PLAINTIFF in acquiring other lending secured by the Property, in an amount to be proven at trial.

74.    By reason of the foregoing, REWARD MORTGAGE, and its progeny and/or successors-in-interest, BLS, have been unjustly enriched and should be required to disgorge its illicit profits and/or make restitution to PLAINTIFF, and/or be enjoined from continuing in such practices pursuant to California Business and Professions Code sections 17203 and 17204.

75.    The harm REWARD MORTGAGE has brought upon PLAINTIFF was done in the regular course of business for REWARD MORTGAGE and BLS, and has been suffered by thousands of California Homeowners.  The harm to PLAINTIFF, and other of the public, outweighs the utility to BLS' policy and practice, because these policies and practices constitute unlawful business practices or acts within the meaning of Business and Professions Code section 17200.

Further, the ongoing practice by REWARD MORTGAGE, and/or its successors and assigns, of illegally table-funding residential mortgages threatens an incipient violation of consumer laws, or violates the policy and spirit of such laws, significantly threatening competition in the residential lending industry in the state.

76.     REWARD MORTGAGE'S unfair, unlawful, and fraudulent business practices of recording illegal deeds of trust, and placing void encumbrances on borrower's properties presents a continuing threat to members of the public in that other consumers will be defrauded into believing their loans are secured when they are not, which will have a chilling effect on the borrower ability to acquire future and further secured lending against their property as they so desire.

77.     PLAINTIFF has no other adequate remedy of law, and is therefore entitled to injunctive relief and attorney's fees as available under the law.

### **Unlawful Practices by PLACER TITLE COMPANY**

78.     PTC knowingly and with willful intent did place an insurance policy for title insurance in the disputed transaction involving REWARD MORTGAGE.

79.     REWARD MORTGAGE was never licensed to conduct business in California by the Department of Business Oversight, the Bureau of Real Estate, nor was REWARD MORTGAGE exempt from licensure under Cal. Financial Code §§ 22100-22112 or 10 CCR § 1422 et. seq.

80.   PTC knew, or had a duty to know, that REWARD MORTGAGE was precluded from entering into consumer finance transactions within the territorial jurisdiction of the state of California, including the transaction at issue in this Complaint.

81.   By reason of the foregoing, PTC has been unjustly enriched and should be required to disgorge its illicit profits and/or make restitution to PLAINTIFF, and/or be enjoined from continuing in such practices pursuant to California Business and Professions Code §§ 17203 and 17204.

82.   The harm PTC has brought upon PLAINTIFF was done in the regular course of business for PTC, and has been suffered by thousands of California Homeowners.  The harm to PLAINTIFF, and other of the public, outweighs the utility to PTC's policy and practice, because these policies and practices constitute unlawful business practices or acts within the meaning of Business and Professions Code § 17200.  Further, the ongoing practice by BLS, as assignee, of illegally table-funding residential mortgages threatens an incipient violation of consumer laws, or violates the policy and spirit of such laws, significantly threatening competition in the residential lending industry in the state.

83.   BLS and PTC's unfair, unlawful, and fraudulent business practices of recording illegal deeds of trust, and placing void encumbrances on borrower's properties presents a continuing threat to members of the public in that other

consumers will be defrauded into believing their loans are secured when they are not, which will have a chilling effect on the borrower ability to acquire future and further secured lending against their property as they so desire.

84.     PLAINTIFF has no other adequate remedy of law, and is therefore entitled to injunctive relief and attorney's fees as available under the law.

## CAUSE OF ACTION FIVE
### Cancelation Of Instrument
### (Statutory Citation)
### Against All Defendants

85.     PLAINTIFF hereby reincorporates all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

### Cancelation of the Assignment

86.     There is in existence a certain written instrument which purports to be an Assignment of Deed of Trust (the "Assignment"), purportedly transferring the DoT from MERS to BLS. The form and contents of the Assignment are as set out in the copy recorded at Sacramento County Recorder's Office and incorporated by reference.

87.     On December 30th, 2009, the Assignment was recorded in the County Recorder's Office for Sacramento County as Document No. 20091230.

88.   The DoT is a three-party contract between PLAINTIFF, REWARD MORTGAG, and PTC, and PLAINTIFF is an actual contracting party to the DoT, and as such has standing to challenge the Assignment.

89.   The Assignment purports to transfer the DoT to BLS on December 15th, 2009.   However, REWARD MORTGAGE was permanently incapacitated prior to the execution of the instrument and could not authorize an agent, MERS, to execute such an instrument.

90.   Because the Assignment is the subject of a dead entity, as described herein, the Assignment is void.

91.   The Assignment creates serious injury to PLAINTIFF's title in the Property as it has placed a cloud on title, and an unauthorized stranger to the Mortgage in a place of creditor against PLAINTIFF.   This void assignment is proximately causing diminution in value to the Property, as well as causing other damages in an amount and degree proven at trial.

92.   PLAINTIFF seeks this Court's exercise of its equitable powers to confirm the Assignment is void, cancel the instrument as without any effect.

**Cancelation of Deed of Trust**

93.   There is in existence a certain written instrument which purports to be a Deed of Trust (the DoT described herein above), purportedly securing the Note

to the Property. The form and contents of the DoT are as set out in the copy of it which is attached to this complaint as Exhibit B and incorporated by reference.

94.   On April 30th, 2007, the DoT was recorded in the County Recorder's Office for Sacramento County as Document No. 20070430.

95.   The DoT is a three-party contract between PLAINTIFF, REWARD MORTGAGE, and PTC, and PLAINTIFF is an actual contracting party to the DoT, and as such has standing to challenge the Deed.

96.   The DoT describes the "Lender" as REWARD MORTGAGE, however the REWARD MORTGAGE was incapable of lending consumers money and also illegally table funded the residential mortgage in violation of California Business and Professions Code section 10234 as described herein above. The DoT is therefore the singular subject of an illegal transaction, i.e. the table funded residential mortgage and illegal loan transaction, and was given as illegal consideration under California Civil Code §§ 1596 and 1608. The DoT is therefore rendered void.

97.   The DoT creates serious injury to PLAINTIFF's title in the Property as it has placed a cloud on title, and a substantial encumbrance on the value of the Property. This void DoT is proximately causing diminution in value to the Property, as well as causing other damages in an amount and degree proven at trial.

98.     PLAINTIFF seeks this Court's exercise of its equitable powers to confirm the DoT is void, cancel the instrument as without any effect.

**Cancellation of Notice of Default**

99.     There is in existence a certain written instrument which purports to be the NoD. The form and contents of the NoD are as set out in the copy of it which is recorded at Sacramento County Recorder's Office and incorporated by reference.

100.    The NoD was recorded in the County Recorder's Office for Sacramento County.

101.    BLS had no authority to execute the NoD because the void DoT rendered the Note unsecured at the time of its recording, and the Mortgage never transferred to BLS because the prohibited transaction stopped its transfer at its inception.  Therefore, REWARD MORTGAGE still is the purported rightful party to execute the NoD, which BLS, or its predecessor-in-interest, had no authorization to act for when it executed and recorded the NoD.

102.    The NoD also contains a false statement that the trustee received a written declaration of default and demand for sale, when in fact the trustee never received such declaration and demand as required by California foreclosure laws.

103.    Because of all of these substantial procedural and substantive defects in the NoD, it is void.

104.   PLAINTIFF seeks this Court's exercise of its equitable powers to confirm the NoD is void, cancel the instrument as without any effect.

## CAUSE OF ACTION SIX
## NEGLIGENCE

### Against PTC and BLS

105.   PLAINTIFF hereby reincorporates all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

106.   Penal Code section 530.5 placed a duty on PTC and BLS to abstain from unlawfully utilizing PLAINTIFF's private personal information.

107.   PTC did use PLAINTIFF'S personal identifying information in its execution of title documents that named a false lender in the closing documents and deed of trust for the disputed loan transaction.

108.   BLS and PTC breached that duty by utilizing PLAINTIFF's name, address, and mortgage account number in the unlawful and unauthorized execution and filing of the deed of trust and NoD.  BLS did not have the authority to execute and record the NoD, and therefore the publication is not privileged. PTC did not have the authority to record the deed of trust, thus the communication is not privileged.

109.   As a direct and proximate cause of BLS' and PTC'S acts, PLAINTIFF has sustained general and special damages, including without limitation devaluation of the Property, in an amount to be proven at trial.

## CAUSE OF ACTION SEVEN
## SLANDER OF TITLE

### Against All Defendants

110.   PLAINTIFF hereby reincorporates all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

111.   As described herein above, REWARD MORTGAGE, and its successors and assigns, with full knowledge that it was not the actual "Lender" but acting in its false capacity as a California Licensed Mortgage Broker, illegally table-funded the Mortgage, and recorded the DoT in direct violation of California Business and Professions Code § 10234, and with full knowledge of its falsity, did record the DoT and encumbered the Property.   The recording was therefore not subject to any privilege under Civil Code section 47.

112.   Further, BLS did record the NoD with full knowledge that BLS did not have the rights under the Mortgage to execute and record the NoD.   The recording was therefore done by BLS without any reasonable belief that it was valid, and is therefore not subject to any privilege under Civil Code section 47.

113.   The DoT is void as an illegal contract made with illegal consideration by a party who was not registered to conduct business in California.   The Assignment of deed is void as a party acting for an incapacitated entity executed the instrument.

114.   The DoT places a large encumbrance on the title to the Property which disparages the title to the Property greatly.   The NoD places the Property's title in a distressed character which likewise and further devalues and disparages the title to the Property.

115.   Because of the malicious executions and recording of the DoT, Assignment of deed and NoD by BLS, Plaintiff's Property has been disparaged greatly and devalued substantially because of the weight of the DoT encumbrance and the distressed character of the title.   These damages were the direct and proximate result of the recording of the DoT and NoD by BLS in an amount to be proven at trial.   Further BLS is additionally vicariously liable for the proximate damages caused by its agent.

116.   Furthermore, the aforementioned recording was motivated by oppression, fraud, and malice on the part of all Defendants, and each of them, in that they committed all these acts with full knowledge of, or reckless disregard for, the fact that they neither owned the rights to the Mortgage or were authorized to

record the statements. Therefore, the awarding of exemplary and punitive damages is justified.

## CAUSE OF ACTION EIGHT
## QUIET TITLE

### Against All Defendants

117.   PLAINTIFF hereby reincorporates all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

118.   PLAINTIFF seeks to quiet title against all the claims of Defendants. There is a dispute as to who is the title holder, both legally and equitably. PLAINTIFF alleges a full and complete offer to pay all sums due to any Defendant upon a factual determination by this Court that, in fact, any sum is due to any Defendant.

119.   PLAINTIFF seeks to quiet title as of  April 30th, 2007, the date of origination of the disputed contract deed of trust, and seeks a judicial declaration that the title to the Subject Property is vested in PLAINTIFF alone and that the Defendants, and each of them, be declared to have no interest estate, right, title or interest in the subject property and that the Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property subject to PLAINTIFF's rights.

120.     PLAINTIFF states as his reasons for a date quieting title other than the date of the filing of this Complaint (C.C.P. § 761.020) as follows:

a.     The date of the execution of a disputed deed of trust sets forth the actual date that the title should be quieted in favor of PLAINTIFF, that which is necessary to determine the dates of damages accrued;

b.     Title is in-arguably vested in PLAINTIFF by grant deed prior to the execution of the disputed deed of trust, as such, upon a finding by this Court in favor of PLAINTIFF, title must be quieted to PLAINTIFF to determine each Defendant's role and liability from the earlier time title vested in PLAINTIFF, and;

c.     Unknown third parties who may have legitimate claims and/or defenses to the subject property must have a date certain that sets forth their claims and/or defenses.

121.   PLAINTIFF is currently the equitable owner of the Subject Property which has the legal description (above herein).

122.   PLAINTIFF prays for the determination of the title of PLAINTIFF against those adverse claims of each and every Defendant herein.

## CAUSE OF ACTION EIGHT
## WRONGFUL FORECLOSURE

### Against All Defendants

123.   PLAINTIFF hereby reincorporates all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

124.   Defendants and DOES have claimed an interest in Plaintiff's contract note and deed of trust.

125.   PLAINTIFFS allege that Defendants have no right, title or interest in their deed of trust or real property, thus, a controversy exists. PLAINTIFF has standing to assert claims under this action.

126.   Defendants did execute a trustee sale on or about October 17, 2016, of PLAINTIFF'S real property by non-judicial foreclosure means. The cause is ripe for adjudication.

127.   Plaintiff has sufficiently alleged and incorporated herein that the recorded Deed of Trust, Assignments of Deed of Trust, Substitution of Trustee, Notice of Trustee Sale, and Notice of Default contain false statements that were memorialized and/or negligently relied upon by Defendants against the interests of Plaintiffs.

128.   PLAINTIFFS allege that they have been harmed as a direct and proximate result of Defendant's acts and omissions and those Plaintiffs substantially relied on Defendant's acts and omissions to their detriment. PLAINTIFF's real property is now subject to adverse possession by Defendants, each of them. PLAINTIFF is entitled to relief for Wrongful Foreclosure.

**PRAYER**

WHEREFORE, PLAINTIFF prays for the following relief:

1.      For an order permanently enjoining BLS, and PTC from continuing its unfair business practices in violation of Business and Professions Code section 17200 as proven at trial;

2.      For an order canceling the Assignment;

3.      For an order canceling the DoT;

4.      For an order canceling the NoD;

5.      For general damages in the sum proven at trial;

6.      For special damages in the sum proven at trial;

7.      For statutory damages in the sum proven at trial;

8.      For punitive and exemplary damages in the sum proven at trial as determined proper by the Court;

9.      For prejudgment interest at a rate of 10% per annum;

10.     For post judgment interest at a rate of 10% per annum;

11.     For attorney's fees and costs of suit;

12.     For any other further relief the court may deem proper.


Dated:  January 20th, 2017

                                        */s/ Herbert Miller*

                                        _____

                                        Herbert Miller, Plaintiff

## PROOF OF SERVICE

I, the Undersigned, Declare: I am, and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to this action. My business address is _____.

On January 21st, 2017, I served the following documents:

**Summons and Complaint**

On the interested parties in this action addressed as follows:

      BAYVIEW LOAN SERVICING, LLC. ("BLS"), located at: 4425 PONCE DE

LEON DR., CORAL GABLES, FL., 33146. (800) 457-5105.

      Defendant PLACER TITLE COMPANY ("PTC") / MOTHER LODE

HOLDING COMPANY, 1508 Eureka Rd., Roseville, CA., 95661.


__ X_ **BY MAIL:** I placed a true copy in a sealed envelope addressed as stated above. Document/s was deposited with the U.S. Postal Service on that same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Respectfully submitted,

Date: January 21st, 2017       _____

                               James Macklin, Declarant